[No. 1085-3.    Division Three.    April 9, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES RICHARD OWEN, *Appellant.*

*Kevin S. Kirkevold* (of *Tunstall & Kirkevold*), for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Robert N. Hackett, Jr., Deputy*, for respondent.

GREEN, J.—Defendant was charged with negligent homicide. Prior to trial, a hearing was held pursuant to CrR 3.5 for the purpose of determining whether certain statements given by the defendant were admissible in evidence. Findings of fact were entered and the trial court concluded the statements were admissible. Subsequently, a jury found the defendant guilty. Defendant appeals.

The sole question presented is whether a person must be apprised of the general nature of the charge against him before he can make a "knowing and intelligent" waiver of his *Miranda* rights.

The facts found by the court at the CrR 3.5 hearing are unchallenged and will be accepted as verities. CAROA 43. These findings may be summarized as follows: On October 21, 1973, police officers responded to an emergency call in the vicinity of Tieton and Nineteenth Avenues in Yakima, Washington. On arrival at the scene, the officers discovered that a vehicle had struck and severely injured a pedestrian. This vehicle was found about a block away with the defendant standing beside it. A brief inquiry disclosed that he was the driver. Defendant was then placed in a patrol car and given his *Miranda* rights. He was taken to the police station for questioning and prior to such questioning was again read his *Miranda* rights and agreed to waive them. At that time, defendant made a statement to the effect

> that he was an epileptic and that his driver's license was expired and that it was expired because he could not obtain the permission of a physician necessary for the maintenance of a driver's license.

He was then taken to a room where he was photographed by video tape, read his *Miranda* rights and waived them again. He was booked into the the city jail. The next day defendant was interviewed by two police officers. Prior to the interview he was again read his *Miranda* rights, waived them, and gave a written statement admitted in evidence at trial. A portion of that statement reads as follows:

> After I crossed South Sixteenth Ave. I felt a seizure coming on. I suffer from epilepsy. I recognize when a seizure is coming on as I have had them in the past and even when I was driving. I have been driving in violation of my driver's license for the past several months. At those times, when driving, and a seizure would come on, I would always have time to pull over to the side of the road and stop. Then after the seizure would pass, I would continue on my way. Yesterday, when I felt the seizure coming on I started to pull over to the side of the road. That is the last thing I remember until I was, rather the car was, up against a telephone pole. I remember saying to myself that I was going to have a seizure and the best thing was to get off the road.

The court found that each time defendant was given his *Miranda* rights, he understood them and "knowingly, intelligently and voluntarily" waived them. Additionally, the court found that defendant was not told that he was being held for investigation of a negligent homicide but, rather, believed that he was being held for a lesser offense involving an automobile accident and expired driver's license; that the officers made no affirmative inducement for·defendant to give a statement concerning the accident nor coerced him into doing so; and that the officers knew the pedestrian had died prior to the time they took the written statement but the withholding of this information was not devious or intentional, but rather overlooked.

■ In concluding that defendant's statements were admissible, the trial court held that it was not necessary to advise the defendant of the general nature of the charge being investigated in order to validate his statements otherwise admissible under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). We affirm.

Defendant contends that because he was never informed of the nature of his peril, he could not be found to have made a "knowing and intelligent" waiver of his *Miranda* rights. This position is premised on the fact that he was not told that he hit a pedestrian, that this pedestrian subsequently died and that he was being held for negligent homicide. We disagree.

There is no dispute that defendant heard his *Miranda* rights read to him on several occasions and that he stated he understood them and waived them. He testified that whenever he had an epileptic seizure, he "blacked out" and could not remember what had happened. The investigating officers did not know that defendant was subject to epileptic seizures. On the other hand, defendant knew he had been in the accident; he knew he had an epileptic seizure, and that the nature of that affliction could very well prevent his appreciation of the events which occurred during the throes of the attack. Consequently, when defendant

stated that he understood his *Miranda* rights and waived them, he must be held to have done so knowing that he did not or may not have known all of the facts surrounding the accident. This alleged lack of knowledge cannot now be used to undermine the fact that he made a "knowing and intelligent" waiver of those rights.

Defendant's contention that he must be aware of the general nature of the charges against him before he can intelligently waive his *Miranda* rights requires an unwarranted extension of *Miranda v. Arizona, supra.* To hold otherwise would stifle effective investigative efforts because at the time of an interview the parameters of the crime may not even be known. Further, where could the line be safely drawn by the officers short of informing a potential defendant of the precise charge to be made by the prosecutor?

In *State v. Cashaw*, 4 Wn. App. 243, 249, 480 P.2d 528 (1971), the court considered the requirements of a "voluntary, knowing and intelligent" waiver of *Miranda* rights:

> The word "intelligently", however, does not mean that the accused must be aware of the incriminating nature of the answers he gives in the course of custodial interrogation; *nor is it required that the accused be aware of the law relating to the crime, possible defenses, and the precise nature of the risks of talking without the aid of counsel. State v. Aiken*, 72 Wn.2d 306, 434 P.2d 10 (1967). As stated in *State v. McKnight*, 52 N.J. 35, 55, 243 A.2d 240, 251-52 (1968):
>
> > Hence if a defendant was given the *Miranda* warnings, if the coercion of custodial interrogation was thus dissipated, *his "waiver" was no less "voluntary" and "knowing" and "intelligent" because he misconceived the inculpatory thrust of the facts he admitted, or because he thought that what he said could not be used because it was only oral or because he had his fingers crossed*, or because he could well have used a lawyer. A man need not have the understanding of a lawyer to waive one. Such matters, irrelevant when the defendant volunteers his confession to a friend or to a policeman passing on his beat, are equally irrelevant when the confession is made in custody after the coercion of

custodial interrogation has been dispelled by the *Miranda* warnings. With such warnings, the essential fact remains that defendant understood he had the right to remain silent and thereby to avoid the risk of self-incrimination. That is what the Fifth Amendment privilege is about.

(Italics ours.)

It is not contested that defendant understood and voluntarily waived his *Miranda* rights. Thus, we hold the defendant also "knowingly and intelligently" waived his *Miranda* rights because he knew that he may not know all of the circumstances surrounding his accident and, notwithstanding, made no inquiry.

Affirmed.

McINTURFF, C.J., and MUNSON, J., concur.